**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MURAD HUSAIN AND MUMTAZ HUSAIN, | )<br>)<br>)<br>) | |
| Plaintiff, | ) | CIVIL ACTION 1:18-cv-7646 |
| | )<br>) | |
| v. | ) | |
| BANK OF AMERICA, NA, MR COOPER, LLC, and NATIONSTAR MORTGAGE. | ) | JURY TRIAL DEMANDED |
| Defendant. | )<br>) | |

---

## <u>COMPLAINT</u>

**NOW COMES** the Plaintiffs, MURAD HUSAIN AND MUMTAZ HUSAIN, by and through their attorneys, Bach Law Offices Inc. and Law Offices of Charles Magerski, complaining of Defendants BANK OF AMERICA, NA, MR COOPER, and NATIONSTAR MORTGAGE as follows:

### NATURE OF THE ACTION

1. Plaintiff MURAD HUSAIN AND MUMTAZ HUSAIN brings this action against RESIDENTIAL CREDIT SOLUTIONS, INC. for damages resulting from breach of contract and violations of the Fair Debt Collection Practices Act ("FDCPA"), and the Illinois Consumer Fraud Act ("ICFA").

2. All the claims stated herein stem from the wrongful servicing, debt collection, and loss mitigation activities related to Husain's mortgage loan.

1

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337 as the action arises under the laws of the United States.

5. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as Husain resides in this District, the property that is the subject of this action is situated in this District, and a substantial part of the events or omissions complained of occurred in this District.

## PARTIES

7. Plaintiffs are consumers and natural people over 18 years of age who resides in Willowbrook Illinois.

8. Defendant BANK OF AMERICA, N.A. ("BANA") is a Delaware corporation with its principal place of business in Charlotte, North Carolina. BANA is a foreign company and a creditor, lender, and servicer of mortgage loans across the country, including Illinois.

9. Defendant, Mr. Cooper is a Delaware limited liability company with its principal place of business in Dallas, Texas. Mr. Cooper is a foreign company in the business of servicing loans and debt collection across the country, including in the state of Illinois.

10. Defendant NATIONSTAR MORTGAGE, LLC ("Nationstar") is a Delaware corporation with its principal place of business in Texas. Nationstar is a foreign company in the business of servicing loans and debt collection across the country, including in the state of Illinois.

## Relevant Facts

11. In July 1999, Husain purchased a home commonly known as 25318 Wheat Drive, Plainfield, Illinois, PIN# 07-01-32-301-003-0000. ("Subject Property") which was Financed by World Savings Bank (Document Number R99085283) ("Mortgage 1")

12. In August 2001, Husain took out a mortgage with US Bank Document Number R20011111200. ("Mortgage 2")

13. In April 2006, Husain took out a first ("Mortgage 3") and second ("Mortgage 4") Mortgage with Bank of America, N.A. (Document Numbers Mortgage 7 - R2006056170 and Mortgage 6 R2006056171).

14. In April 2006, World Savings Bank released Mortgage 1; Document Number R2006064702.

15. In September 2006, Husain took out a mortgage with Countrywide Bank, N.A. document Number R2006158577. ("Mortgage 5")

16. In September 2006, Bank of America, NA filed a release of Mortgage 3; Document Umber R2006158578. *See Exhibit A* – Release of Mortgage and *Exhibit B* – Satisfaction of Mortgage

17. In September 2012, Mortgage 4 was assigned to 2006H CWHEQ; Document Number R2012070647.

18. In April 2013, Bank of America, NA assigned the released and satisfied mortgage to Nationstar Mortgage, LLC.

19. In April 2014, Bank of New York Mellon (2014 CH 868) filed for foreclosure. *See Exhibit C* – print of from Will County Circuit Court

20. In June 2015, Nationstar Mortgage filed a Loan Modification Agreement R2015047653 *See Exhibit D* – Loan modification

21. Sheriff sale was approved on April 14, 2016. *See Exhibit C.*

22. On November 22, 2017, Husain received Notice from Mr. Cooper that his loan has been transferred from Mr. Cooper to Bank of America. *See Exhibit E* – Notice of Loan Transfer

23. On January 1, 2018, Mr. Cooper sent an invoice to Husain which alleges an amount currently due of $81,140.54, which includes $18,824.44 in escrow shortage and $1,252.00 in lender paid fees. *See Exhibit F* – Mr. Cooper's invoice

24. In January and February 2018, Safeguard inspected the subject property at the request of Bank of America. *See Exhibit G and H* – inspection order

25. On March 1, 2018, Husain received an Invoice from Bank of America, N.A. alleging a balance due of $83,530.31, which includes a $18,824.44 escrow shortage and $15.00 of current fees. *See Exhibit I*

26. On March 22, 2018 Husain received a letter from Bank of America, N.A. which acknowledges the Foreclosure sale. *See Exhibit J*

27. On March 23, 2018, Bank of America sent a letter informing Husain advising Husain that Forced place insurance will be added onto the Subject Property. *See Exhibit K*

28. On April 2, 2018, Husain received from Bank of America, N.A.  a Notice of Intent to accelerate on the Subject Property. *See Exhibit L*

29. As of October 1, 2018, Husain continues to receive a Dunning Letters from Bank of America, NA that alleges a total balance due of $100,960.69 which includes an Escrow balance of 28,085.59. *See Exhibit M*

## IMPACT OF CONTINUING FALSE COLLECTIONS

30. As of today, the false threat of additional foreclosure and continual attempts to collect erroneous accounts continues to haunt Plaintiffs.

31. The entire experience has imposed upon Plaintiffs significant distrust, frustration and distress, and has rendered Plaintiffs hopeless about their ability to move forward.

32. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein including specifically, the loss of credit; the

loss of time and other frustration and aggravation associated with telephone calls; time and money expended meeting with their attorneys; tracking the status of their former home; monitoring multiple court jurisdictions; and the mental and emotional pain related to the continual stress, anguish, humiliation, and embarrassment.

33. Due to the conduct of the Defendants, Plaintiffs were forced to retain counsel.

### COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST BANK OF AMERICA, MR. COOPER AND NATIONSTAR)

34. Plaintiff restates and realleges paragraphs 1 through 34 as though fully set forth herein.

35. Plaintiff is a consumer under 15 U.S.C. § 1692a(3), as the subject loan was extended on Plaintiffs' primary residence and was strictly for personal, family, and household purposes.

### AGAINST BANK OF AMERICA

36. Bank of America qualifies as a "debt collector" as defined by § 1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

37. Bank of America qualifies as a "debt collector" because it acquired the subject loan after it was in default and treated the subject loan as in default when it acquired rights to the subject loan.

### Violation of §§ 1692e, e(2), e(5), e(8), e(10), f, f(1), and f(6)

38. Bank of America engaged in unfair, unconscionable, false, and deceptive conduct by:

   a. Using false representations and deceptive means to collect or attempt to collect the nonexistent debt (§ 1692e);
   b. Falsely representing the character, amount, and legal status of the subject debt in its collection calls, collection letters, and monthly statements (§ 1692e(2));
   c. Falsely threatening that the second mortgage loan was due after Bank of America had released Plaintiffs' personal liability for repayment (§ 1692e(5));
   d. Falsely communicating that two separate loan numbers applied to the same mortgage loan (§ 1692e(8));
   e. Falsely claiming that the subject debt was in default and that she owed past-due

amounts (§§ 1692e(8) & e(10));

    f.   Improperly adding default charges, late fees, and corporate advances to Plaintiffs' account (§§ 1692e(8), 1692e(10), 1692f(1));

    g.   Communicating information to Mr. Cooper and Nationstar which Bank of America knew or should have known to be false, including that the loan was due for December 1, 2007 at the time of the transfer in July 2015, and the failure to communicate that the subject loan was disputed prior to the transfer (§§ 1692e(8) & 1692e(10)); and

    h.   Using unfair and unconscionable means to attempt to collect a debt– including attempting to collect a balance, payments, interest, fees, and charges – when collection was not expressly authorized by the contract or law (§ 1692f & f(1)).

39. Additionally, Bank of America violated §§ 1692e & f through its (i) unethical mismanagement of the subject loan account; (ii) refusal to accurately respond to Plaintiffs' requests for information and disputes; (iii) threats of collection with Plaintiffs' personal liability on the second mortgage loan had been released; (iv) repeated misrepresentations of the status of the subject loan; and (v) and making false representations of the legal status of the second mortgage loan.

40. When Bank of America called and sent its collection letters to Plaintiff, Bank of America's claims that it could collect money from Plaintiff were misstatements of both fact and law.

41. Bank of America's calls and letters were false and misleading because they claimed that Plaintiff had personal liability with respect to a nonexistent debt and threatened collection that was not authorized by law or contract.

42. Bank of America's conduct was employed to induce Plaintiff to pay the amount claimed or be subject to threats of legal proceedings.

43. All of Bank of America's actions were the proximate cause of damages to Plaintiff, including those alleged in paragraphs above.

**MR. COOPER AND NATIONSTAR**

44. Mr. Cooper and Nationstar qualifies as a "debt collector" as defined by § 1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

45. Mr. Cooper and Nationstar qualifies as a "debt collector" because it acquired the subject loan after it was in default and treated the subject loan as in default when it acquired rights to the subject loan.

**Violation of §§ 1692e, e(2), e(5), e(8), e(10), f, f(1), and f(6)**

46. Mr. Cooper and Nationstar engaged in unfair, unconscionable, false, and deceptive conduct by:

   a. Using false representations and deceptive means to collect or attempt to collect the nonexistent debt (§ 1692e);
   b. Falsely representing the character, amount, and legal status of the subject debt in its collection calls, collection letters, and monthly statements (§ 1692e(2));
   c. Falsely threatening that the second mortgage loan was due after Plaintiffs' personal liability for repayment had been released. (§ 1692e(5);
   d. Falsely claiming that the subject debt was in default (§§ 1692e(8) & e(10));
   e. Improperly adding default charges, late fees, and corporate advances to Plaintiffs' account (§§ 1692e(8), 1692e(10), 1692f(1)); and
   f. Using unfair and unconscionable means to attempt to collect a debt– including attempting to collect a balance, payments, interest, fees, and charges – when collection was not expressly authorized by the contract or law (§ 1692f & f(1)).

47. Additionally, Mr. Cooper and Nationstar violated §§ 1692e & f by advising Plaintiff that both liability and the lien [on the second mortgage loan] had been retained when it was released.

48. Plaintiff suffered damages as set forth in paragraphs above that were proximately caused by the conduct of Bank of America, Mr. Cooper and Nationstar.

WHEREFORE, Plaintiff Murad Husain and Mumtaz Husain requests that this Honorable Court:

   a. enter judgment in her favor and against Bank of America, Mr. Cooper and Nationstar;
   b. declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    c.  award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

    d.  award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and

    e.  award any other relief as this Honorable Court deems just and appropriate.

**COUNT II – VIOLATION OF ILLINOIS CONSUMER FRAUD ACT**
**(AGAINST BANK OF AMERICA)**

49. Plaintiff restates and realleges paragraphs 1 through 49 as if stated herein.

50. Plaintiff meets the ICFA definition of "consumer" and "person." *See* 810 ILCS 505/1.

51. Bank of America violated 815 ILCS 505/2 by employing unfair and deceptive acts and practices when dealing with Plaintiff. The unfair and deceptive acts and practices complained of occurred in the course of conduct involving trade or commerce.

52. Bank of America violated 815 ILCS 505/2 by engaging in unfair and deceptive acts, and by using fraud, deception, and misrepresentation when dealing with Plaintiff.

**Unfair and Deceptive Acts**

53. Bank of America made outright unfair and deceptive misrepresentations to Plaintiff as to the status of his loan account, the amounts owed, how payments would be applied, how Plaintiff *should* act, and Bank of America's actual treatment of Plaintiffs' account internally compared to its representations.

54. It was unfair and deceptive for Bank of America to send Plaintiff notices falsely claiming that he was in default.

55. Bank of America unfairly and deceptively sent Plaintiff notices, letters, and statements that included incorrect information.

56. It was unfair and deceptive for Bank of America to send Plaintiff notices that his liability had been released on the second mortgage loan at the same time that it continued to collect and cash his payments, confuse Plaintiff, and then disregard his written disputes and requests for information.

57. It was unfair and deceptive for Bank of America to state that Plaintiff was due for amounts that were not due.

58. It was unfair and deceptive for Bank of America to (a) inundate Plaintiff with conflicting and false information about status of his second mortgage loan, (b) send conflicting and false correspondence with respect to the loan account, and (c) make contradictory communications in response to nearly all of Plaintiffs' disputes and requests for information (or not respond at all).

59. Bank of America's communications and conduct were purposely confusing, misleading, and designed to trick Plaintiff making payments that he did not owe.

60. Bank of America employed communications with Plaintiff that were confusing and specifically designed to deceive Plaintiff so she could not decipher the true statements from the false statements.

61. Plaintiffs' inquiries and disputes regarding the servicing of his second mortgage loan were never investigated nor accurately answered. In conjunction with Bank of America's outright misrepresentations, Plaintiff was forced into a perpetual state of confusion, depriving Plaintiff of a peaceful existence. Plaintiff relied upon the unfair and deceptive conduct to her detriment.

62. Bank of America intended that Plaintiff rely upon its unfair and deceptive practices to induce Plaintiff into making monthly payments that he did not owe, then sell the loan at foreclosure.

63. Additionally, it was unfair and deceptive to transfer servicing rights on a mortgage that has been released.

64. Bank of America's conduct was willful, malicious, unfair, arbitrary, and designed to place Plaintiffs' account in a perpetual state of "default" and take advantage of an unsophisticated consumer.

**Public Policy, Immoral Actions, and Substantial Injury to Consumers**

65. Bank of America's conduct offends public policy as it demonstrates an industry-wide practice of ignoring court orders, sending conflicting statements to induce payments that are not owed, and by profiting off of borrowers' payments – with the sole intention of ultimately selling the loan to another servicer with inflated balances to increase profits from that sale.

66. Bank of America's actions cause substantial injury to consumers generally because:

   a. consumers reasonably expect their contracts to be honored, their loans and accounts to be properly managed, and their payments properly applied;
   b. consumers reasonably expect that creditors and loan servicers will communicate with them truthfully and accurately regarding their account and payments;
   c. consumers reasonably expect that loan servicers will not make false representations or induce payments on false pretenses;
   d. consumers reasonably expect that, if there is a dispute, the servicer will take honest efforts to resolve the dispute instead of misrepresenting facts; and
   e. consumers reasonably expect that servicers will not communicate false information to successor loan servicers.

67. Plaintiff could not avoid these immoral undertakings because Bank of America would not accurately communicate with him.

68. Plaintiff actually believed that Bank of America would honor its claims and representations.

69. When taken as a whole over several years, Bank of America's conduct was so unethical and unending that Plaintiff had no choice but to submit. Plaintiff had no actual control over (a) how his payments were being applied, (b) Bank of America's release of the second mortgage loan, (c) how Bank of America truly treated the loan internally, (d)

whether Bank of America's representations were truthful, or (e) what information Bank of America would provide.

70.  This conduct is part of a pattern and practice of behavior in which Bank of America routinely engages as part of its business model. It is Bank of America's normal business practice to disregard existing agreements and state and federal law, then misstate the nature of outstanding "debts" and amounts "owed" to consumers for its own pecuniary gain.

**Intent, Reliance, and Punitive Damages**

71. Bank of America's conduct in relation to Plaintiff was willful, malicious, and arbitrary. It was designed to place Plaintiff account in a perpetual state of "default" while taking advantage of a physically and emotionally vulnerable borrower and a financially vulnerable family.

72. Bank of America's overall scheme was designed and intended to trick Plaintiff into paying a loan he was not liable on. Ultimately, Bank of America intended to keep Plaintiff in a state of confusion while profiting from illegal fees and maximizing profits.

73. Bank of America's actions were intentionally confusing and specifically designed to deceive Plaintiff.

74. Bank of America's communications and conduct were purposely confusing, false, misleading, and designed to trick Plaintiff. Plaintiff could not decipher the true statements from the false statements.

75. Plaintiff did in fact rely on Bank of America's unfair and deceptive practices by incurring fees and costs.

76. Plaintiff suffered damages as set forth above that were proximately caused by the conduct of Bank of America.

77. An award of punitive damages is appropriate because Bank of America's conduct was

outrageous, willful, and wanton, and showed a reckless disregard for the rights of

Plaintiff. Additionally, when Plaintiff objected, Bank of America ignores Plaintiffs'

disputes.

WHEREFORE, Plaintiffs Murad Husain and Mumtaz Husain request that this Honorable

Court:

    a. enter judgment in Plaintiffs' favor and against Bank of America;
    b. award Plaintiff actual and punitive damages in an amount to be determined at trial for the underlying ICFA violations;
    c. award Plaintiff costs and reasonable attorney's fees as provided under 815 ILCS 505/10a(c); and
    d. award any other relief as this Honorable Court deems just and appropriate.

Dated: September 27, 2018

Respectfully Submitted,
Murad and Mumtaz Husain

By: /s/ Penelope N. Bach
Penelope N. Bach, Esq. ARDC# 6284659
Paul M. Bach, Esq. ARDC#6209530
Counsel for Plaintiffs
Bach Law Offices, Inc,
PO Box 1285
Northbrook, IL 60065
847-564-0808
pnbach@bachoffices.com
paul@bachoffices.com

Charles Magerski
Law Offices of Charles L. Magerski
1147 West 175th Street
Homewood, IL 60430-4604
708-942-8523
cmagerski@aol.com