**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MURAD HUSAIN & MUMTAZ HUSAIN,** | |
| **Plaintiffs,** | **No. 18 cv 7646** |
| **v.** | **Judge Mary Rowland** |
| **BANK OF AMERICA, N.A., NATIONSTAR MORTGAGE d/b/a MR. COOPER, LLC,** | |
| **Defendants.** | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs Murad and Mumtaz Husain assert claims against Defendants Bank of America, N.A. ("BANA") and Nationstar Mortgage d/b/a Mr. Cooper, LLC ("Nationstar") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") (Count I), the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* ("ICFA") (Count II), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") (Count III). For the reasons stated herein, Defendants' motion to dismiss [52] is granted in part and denied in part. Defendants' motion to dismiss the FDCPA claim (Count I) is granted, with prejudice, Defendants' motion to dismiss the ICFA claim (Count II) and TCPA (Count III) claim is denied.

<u>**FACTUAL ALLEGATIONS**</u>

Plaintiffs purchased a home in Plainfield, Illinois, PIN# 07-01-32-301-003-0000 (the "Property") in July 1999. On March 22, 2006, BANA issued a Promissory

1

Note ("Mortgage 1") and a mortgage ("Mortgage 2") on the property. These mortgages were recorded on April 4, 2006 as document numbers R2006056170 and R2000605171, respectively. Mortgage 1 was for $177,000. (Dkt. 52, Ex. B) Mortgage 2 was for $175,000. (Dkt. 52, Ex. E) Plaintiffs allege that in 2006, they had multiple conversations with BANA that "resulted in a modification that combined Mortgage 1 and Mortgage 2 into one account and reduced the principle balance on the newly consolidated loan." (Dkt. 44 ¶ 11; 58, 2) According to Plaintiffs, the modification altered the combined principal amount to $85,847.81.[1]

On September 1, 2006, Plaintiffs took out a third mortgage ("Mortgage 3") with Countrywide Bank, N.A. in the amount of $243,000. Plaintiffs believe Mortgage 3 paid off both Mortgage 1 and Mortgage 2. Plaintiffs allege "upon information and belief" that Ticor Title Insurance Company ("Ticor") received a payoff for Mortgage 1 and Mortgage 2 in the amount of $85,847.81, which was sent to BANA at closing.[2] (Dkt. 44 ¶ 13). This payment, Plaintiffs allege, resulted in a release for both Mortgage 1 and Mortgage 2.[3]

Plaintiffs also claim that Mortgage 3 was assigned to Nationstar. The balance sought by Mr. Cooper d/b/a Nationstar was approximately double the amount Plaintiffs believed was due. Plaintiffs claim that Mr. Cooper d/b/a Nationstar told

---

[1] Both Plaintiffs and Defendants have attached a Loan Modification Agreement that was executed in 2015. (Dkt. 58, Ex. D; Dkt. 52; Ex. D) The Court will discuss the 2015 Agreement below.
[2] Plaintiffs do not attach any documents to support that Mortgage 1 & 2 were both released for $85,847.81 and as described below, Defendants vigorously dispute this allegation. Defendants attach documents to assert that the "correct" payoff number for Mortgage 2 was $174,984.65. (Dkt. 52, Ex. N; Dkt. 52, Ex. O)
[3] Release of Mortgage 1 was recorded on September 1, 2006 as document number R2006158578 and release of Mortgage 2 was recorded on September 26, 2006 as document R2006165859. Defendants contend the release of Mortgage 1 was in error. (Dkt. 52, 3-4)

them that the amount due was in error and would be removed from their account. Eventually, "[o]ut of frustration with the extreme balance requested by Mr. Cooper/Nationstar, Plaintiffs sought out advice from their financial advisor and ceased making payments believing that if the home was sold at foreclosure the excessive billing would stop." (Dkt. 58, 2) The foreclosure action was completed on April 14, 2016.

However, the foreclosure action did not provide Plaintiffs with the anticipated relief. Plaintiffs believe that all of their mortgage obligations were satisfied and released at the conclusion of the foreclosure action. Yet even after their home was sold at foreclosure, Mr. Cooper d/b/a Nationstar and BANA continued to send monthly dunning letters regarding their mortgage obligations. Their Amended Complaint lists letters from Mr. Cooper d/b/a Nationstar from November 20, 2017, December 19, 2017, and January 1, 2018. (Dkt. 44 ¶ 37) Their Amended Complaint lists letters from BANA from January 16, 2018, January 26, 2018, February 16, 2018, March 16, 2018, June 18, 2018, July 16, 2018, August 16, 2018, September 19, 2018, October 16, 2018, and November 16, 2018. (Dkt. 44 ¶ 44) Plaintiffs claim that these letters showed wrongful balance amounts, additional interest and fees, added inspection charges and real estate taxes, and that all of these letters and financial statements were false and misleading. Plaintiffs maintain that they did not and do not owe a secured debt to Defendants. They also take issue with a March 2018 letter from BANA stating that forced place insurance would be added to the Property, and an April 2018 letter from BANA that included a notice of intent to accelerate on the Property. These letters

3

misled Plaintiffs into thinking they had to defend another foreclosure case even though the Property was sold in foreclosure in 2016.

Additionally, Plaintiffs claim that after the foreclosure of their home on April 14, 2016, Murad Husain revoked consent for Mr. Cooper d/b/a Nationstar to contact him on his cellular phone. Murad claims that he continued to revoke his consent many times thereafter, yet Mr. Cooper d/b/a Nationstar made over 100 calls to Murad. Murad claims that these calls were made with a pre-recorded voice, leaving the exact same message with the same voice, and that the recorded voice started talking prior to the call being answered. Similarly, Mumtaz alleges that, in October 2017, she revoked consent for BANA to contact her on her cell phone. Since the date of her revocation, BANA has made over 50 calls to Mumtaz. She also claims that these calls were made with a pre-recorded voice, leaving the exact same message with the same voice, and that the recorded voice started prior to the call being answered. She further claims that she made multiple demands for BANA to cease calling her.

Plaintiffs filed this action on November 19, 2018. They allege damages in the form of extreme frustration and distress, loss of credit standing and creditworthiness, denial of credit opportunities, loss of business, and loss of income.

Defendants' motion to dismiss contests many of Plaintiffs' facts, and Defendants attach several documents in support of their motion.[4] First, Defendants

---

[4] Courts normally do not consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, however where a document is referenced in the complaint and central to plaintiff's claims, the Court may consider it in ruling on the motion to dismiss. *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) ("This rule is a liberal one—especially where…the plaintiff does not contest the validity or authenticity of the extraneous materials."). In addition, the Court may "take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned." *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th

agree that on March 22, 2006, Plaintiffs took out Mortgage 1 for $177,000 and Mortgage 2 for $175,000. However, Defendants disagree with Plaintiffs' assertion that, after conversations with BANA in 2006, a loan modification combined Mortgage 1 and Mortgage 2 into one account with a principal balance of $85,847.81. Defendants argue that Plaintiffs' alleged modification to $85,000 is not only unsupported by any of the loan documents or other evidence, but unlikely given that the two mortgages totaled a nearly $352,000 obligation. Rather, Defendants maintain that Mortgage 1 and Mortgage 2 remained separate loans. According to the documents provided, the only modification appears to have occurred in 2015 and references Mortgage 1.[5]

Second, Defendants maintain that Mortgage 1 was never paid off and was never foreclosed. The timeline according to Defendants is as follows. In March 2006, Plaintiffs take out Mortgage 1 and Mortgage 2. Contrary to Plaintiffs assertion, Defendants did not modify Mortgage 1 and Mortgage 2 into one account at any point in 2006. In September 2006, Plaintiffs took out Mortgage 3 in the amount of $243,000. Mortgage 3 was recorded with the Will County Recorder of Deeds and was used to pay off Mortgage 2 only.[6] According to Defendants, Mortgage 3 did not pay off

---

Cir. 2017). Here, Defendants cite to loan documents referenced in the Amended Complaint, as well as documents recorded with the Will County Recorder of Deeds, making them matters of public record. Plaintiff has not raised any objections regarding the documents' validity or authenticity.

[5] Defendants have attached the 2015 Loan Modification Agreement. It only lists the reference number for Mortgage 1. Defendants rely on this Agreement to demonstrate that Plaintiffs knew or should have known that Mortgage 1 was still a valid and enforceable lien on the Property in 2015. Additionally, the Loan Modification Agreement adjusts the monthly payments for Mortgage 1 and states the new principal balance as a result of the agreement is $233,000.

[6] Defendants attach the Satisfaction of Mortgage, which only lists Mortgage 2, (Dkt. 52, Ex. J), and the Settlement Statement for Mortgage 3 that shows a payoff to BANA in the amount of $174,924.65. (Dkt. 52, Ex. N) This payoff corresponds with the Account Transaction History for Mortgage 2, which received a payoff on the same day in the amount of $174,984.65. (Dkt. 52, Ex. O) Defendants believe that these three documents clearly evidence that the origination of Mortgage 3 only resulted in the payoff of Mortgage 2.

Mortgage 1. However, on the same date and at the same time as the recording of Mortgage 3, Defendants' title insurance company, Ticor, erroneously recorded a Certificate of Release for Mortgage 1.[7] Several weeks later, Ticor correctly recorded a certificate of release for Mortgage 2.

It is undisputed Plaintiffs defaulted on Mortgage 3. Defendants contend that the foreclosure sale resulted in a satisfaction and release of Mortgage 3 only. It did not, according to Defendants, result in a satisfaction or release of Mortgage 1. Thus, while Plaintiffs believe Defendants were sending false, misleading letters with incorrect balance amounts, Defendants maintain that Plaintiffs never paid off Mortgage 1. Defendants point to a series of documents in support of this assertion, including loan documents, statements of release and satisfaction, foreclosure orders, and the loan history for Mortgage 2.

In response to Plaintiffs' claims that, after Plaintiffs took out Mortgage 3, BANA received a payment for Mortgage 1 and Mortgage 2 in the amount of $85,847.81, Defendants note that the combined total of Mortgage 1 and Mortgage 2 was almost $352,000. Defendants maintain that it is inconceivable that a payment of $85,847.81 would cover Plaintiffs $352,000 obligation. They also cite to the Settlement Statement which shows a payment of $174,924.65 to BANA in satisfaction of Mortgage 2, not a payment of $85,847.81. Defendants further claim that there is no evidence showing any payments in the amount of $85,847.81, and there is no

---

[7] As noted by Defendants, under Illinois law, the "[r]ecording of a wrongful or erroneous certificate of release by a title insurance company or its title insurance agent shall not relieve the mortgagor or the mortgagor's successors or assignees from any personal liability on the loan or other obligations secured by the mortgage." 765 ILCS 935/40.

evidence supporting Plaintiffs' assertion that Mortgage 1 and Mortgage 2 were combined into one account.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and must "construe the complaint in the 'light most favorable to the' plaintiff." *Zahn v. N. Am. Power & Gas, LLC*, 847 F.3d 875, 877 (7th Cir. 2017) (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016)). However, the Court is not "obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Ill. Bible Coll. Ass'n v. Anderson*, 870 F.3d 631, 636 (7th Cir. 2017), *as amended* (Oct. 5, 2017), *cert denied sub nom. Ill. Bible Coll. Ass'n v. Cross*, 138 S. Ct. 1021 (2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "While a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her

7

complaint to be considered adequate. . . ." *Bell*, 835 F.3d at 738 (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### A. FDCPA claim

Plaintiffs' first claim against Defendants is for a violation of the FDCPA, 15 U.S.C. § 1692 *et seq*. Defendants move to dismiss, arguing that they are not debt collectors as defined by the FDCPA.

The FDCPA prohibits "debt collectors" from engaging in abusive, deceptive, or unfair debt-collection practices. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). Pursuant to § 1692e of the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e)(2). Two threshold criteria must be met for the FDCPA to apply: 1) "the defendant must qualify as a 'debt collector'"; and 2) "the communication by the debt collector that forms the basis of the suit must have been made 'in connection with the collection of any debt.'" *Gburek*, 614 F.3d at 384 (quoting 15 U.S.C. § 1692a(6), §§ 1692c(a)-(b), § 1692e, § 1692g).

Under the FDCPA, "debt collector" is defined in three distinct ways: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," (the "principal purpose" definition), (2) any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" (the "regularly collects" definition), or (3) any creditor who, in the process of collecting his

own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. 15 U.S.C. § 1692a(6).[8]

In *Henson v. Santander*, the Supreme Court clarified that the "regularly collects" definition, by its plain terms, applies only to entities that collect debts on behalf of "another." 137 S. Ct. 1718, 1722, 198 L. Ed. 2d 177 (2017) ("a debt purchaser…may indeed collect debts for its own account without triggering the statutory definition [of 'debt collector']"; "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another'"). This is true regardless of whether the debtor had defaulted prior to or after the holder's acquisition of the debt. *Id.* at 1724; *Booker v. Bew Penn Fin., LLC*, No. 17 C 1578, 2017 WL 3394717, at *2 (N.D. Ill. Aug. 8, 2017); *see also Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 202 L. Ed. 2d. 390 (2019) ("debt-collector-related prohibitions of the FDCPA (with the exception of § 1692f(6)) do *not* apply to those who… are engaged in no more than security-interest enforcement") (emphasis in original).

---

[8] The second part of § 1692a(6) defines the classes of persons that are excluded from the definition of debt collector, assuming s/he meets one of the three definitions of debt collector. *See Henson v. Santander Consumer USA, Inc.,* 817 F.3d 131, 136 (4th Cir. 2016), *aff'd,* 137 S. C.t 1718, 198 L. Ed. 2d 177 (2017). As the Fourth Circuit noted in *Henson*, the exclusion of § 1692(a)(6)(F)(iii) applies to mortgagees and mortgage servicers and was "intended by Congress to protect those entities that function as loan services for debt not in default. *See* S. Rep. No. 95-382, at 3-4 (1977), *as reprinted in* 1977 U.S.C.CA.N. 1695, 1698 ('[T]he committee does not intend the definition [of debt collector] to cover the activities of… *mortgage service companies* and others who service outstanding debts for others…)'". *Id.* (emphasis in original). Nationstar is such a mortgage serving company and falls into one of exclusions of § 1692a(6). Since it is not a debt collector, Navistar cannot be sued under the FDCPA. Nonetheless, the Court will proceed to address the parties' arguments as they pertain to both BANA and Nationstar.

Accordingly, under *Henson*, the only relevant question is whether Defendants were collecting on their own accounts. The Amended Complaint allege that BANA and Nationstar were collecting on their own accounts and are therefore not debt collectors under the "regularly collects" definition. The documents provided support these allegations.

Still, Plaintiffs argue that Defendants' principal purpose is the collection of debts.[9] Plaintiff does not provide any facts or arguments in support and, they do not cite to any authority suggesting BANA and Nationstar are debt collectors whose principal purpose is the collection of debts.[10] The Court need not accept Plaintiffs' legal conclusions as true. Defendants on the other hand demonstrate that BANA and Nationstar are consumer finance companies that lend money, service loans, collect debt for themselves, and borrow and invest their capital. In light of these other financial activities, Defendants argue their principal purpose is not debt collection. *See Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016), *aff'd*, 137 S. C.t 1718, 198 L. Ed. 2d 177 (2017) ("[u]nder the plaintiff's interpretation, a company such as Santander—which, as a consumer finance company, lends money, services loans, collects debt for itself, collects debt for others, and otherwise engages

---

[9] In their Amended Complaint, Plaintiffs allege Defendants are debt collectors because they "regularly collect" debts. In their response brief, Plaintiff argues that Defendants are also debt collectors under the "principal purpose" prong. Defendants asked the Court to disregard Plaintiffs arguments. (Dkt. 59, 2) (citing *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) ("it is a basic principle that the complaint may not be amended by the brief in opposition to a motion to dismiss"). For the sake of completeness, the Court addresses both of Plaintiffs' arguments neither of which have merit.

[10] Plaintiffs rely on pre-*Henson* caselaw regarding whether the subject debt was in default when it was transferred. As Defendants note, that line of reasoning was expressly overturned by *Henson v. Santander*, 137 S. Ct. 1718, 1722, 198 L. Ed. 2d 177 (2017).

in borrowing and investing its capital—would be subject to the FDCPA for all its collection activities simply because one of its several activities involves the collection of debts for others. Congress did not intend this. Rather, it aimed at abusive conduct by persons acting as debt collectors."). The Court agrees. Defendants are not debt collectors under the principal purpose definition.

Finally, Plaintiffs argue that Nationstar is a debt collector because it uses a different name, "Mr. Cooper", to collect on its accounts. Plaintiffs, as "unsophisticated consumers, thought Mr. Cooper was a collection agency seeking to collect on an account they no longer had." (Dkt. 58, 9) Defendants reply that the letters identified in Plaintiffs' Amended Complaint do not suggest that Nationstar was collecting on behalf of a third party. The letters cited in Plaintiffs' Amended Complaint stated they were from "Nationstar Mortgage LLC d/b/a Mr. Cooper." (Dkt. 44, ¶ 37) Thus, Defendants argue, Mr. Cooper was explicitly identified as Nationstar's "d/b/a." Again, the Court agrees with Defendants. The language cited in the Amended Complaint is "plainly and clearly not misleading." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (defendant's motion to dismiss can only be granted if "the allegedly offensive language is plainly and clearly not misleading"); *see also Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) ("a plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it") (internal citations omitted). Plaintiffs have not sufficiently alleged that Nationstar

was using a different name to collect on its accounts, or that unsophisticated consumers would think so.

For these reasons, Nationstar and BANA are not debt collectors. Plaintiffs have therefore failed to state a claim under the FDCPA. Count I is dismissed with prejudice.

## B. TCPA Claim

To state a claim under the TCPA, a plaintiff must allege that the defendant made a call to his or her cellphone using an automated dialing system ("ATDS" or "autodialer"). 47 U.S.C. § 227(b). As defined by the TCPA, an ATDS is a device with the capacity to store or produce telephone numbers, either randomly or sequentially, and to actually dial those numbers. *Id.* at § 227(a)(1). The device must have the present, as opposed to merely potential, capacity to function as an ATDS. *See ACA Int'l v. FCC*, 885 F.3d 687, 695-700 (D.C. Cir. 2018). It must also have the ability to produce numbers using a random or sequential number generator, as opposed to merely dialing numbers from a stored list. *See Johnson v. Yahoo!, Inc.,* 346 F. Supp. 3d 1159, 1162 (N.D. Ill. 2018); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 936-40 (N.D. Ill. 2018).

Plaintiffs allege that both Defendants placed a combined total of 150 phone calls to their cellphones. Defendants fault the Amended Complaint for failing to allege 1) Plaintiffs' phone numbers, 2) that an ATDS with the capacity to generate random or sequential numbers was used, and 3) how and when consent was revoked. The first argument in misplaced, as courts in this district have not required plaintiffs to specify

the phone numbers in TCPA claims. *See, for example, Yates v. Checker's Drive-In Rests. Inc.*, No. 17 C 9219, 2018 WL 3108889, at *2 (N.D. Ill. June 25, 2018) (rejecting the defendant's argument that the plaintiff must specify in their complaint the exact dates and phone numbers for each violation of the TCPA).

Regarding Defendants' second argument, courts in this district have adopted differing views on the requirements for pleading a TCPA violation. Some courts have suggested that plaintiffs need only allege the use of an ATDS as defined in the statute, without supporting facts. *See Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug 7, 2012) ("[I]t would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used."); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010-11 (N.D. Ill. 2010) (finding allegations that the defendants "used 'equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator'" sufficient to survive a motion to dismiss). Other courts have found that alleging the mere statutory definition of an ATDS without further descriptive details is too conclusory to withstand a motion to dismiss. *See Serban v. CarGurus, Inc.*, No. 16 C 2531, 2016 WL 4709077, at *3-4 (N.D. Ill. Sep. 8, 2016); *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983 (N.D. Ill. 2013). Those courts require a plaintiff to present additional facts supporting a reasonable inference that the defendant used an ATDS, such as a description of the communication's generic, promotional content, or hearing a pause before being connected to an operator. *See Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D.

Ill. 2016); *Oliver v. DirecTV, LLC*, No. 14 C 7794, 2015 WL 1727251, at *3 (N.D. Ill. Apr. 13, 2015).

Plaintiffs' complaint alleges sufficient facts to survive under either standard. The Amended Complaint states that Defendants used a "predictive dialer" or "automatic telephone dialing system," and that all calls involved a pre-recorded message that started speaking before the Plaintiffs answered the call or involved a brief pause at the outset of the call. Additional facts regarding the capacity of the machine can be ascertained during discovery; at this preliminary stage, Plaintiffs' allegations are sufficient.

Nonetheless, Defendants argue that Plaintiffs' allegations suggest they were only called by a predictive dialer and not an ATDS. (Dkt. 52, 15-16) Predictive dialers include a wide variety of devices, some of which do not qualify as an ATDS under the TCPA because they lack the capacity to randomly or sequentially generate numbers to dial. *See Pinkus*, 319 F. Supp. 3d at 936-40. However, the difference between a predictive dialer and an ATDS is not readily apparent to a recipient of an automated call. Such a determination requires information about the technical details of the device that the Defendants used to make the calls—information that the Plaintiffs lack prior to discovery. Accordingly, Plaintiffs need not provide specific, technical detail about the device at issue at the pleading stage. *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015) (explaining that although a plaintiff must plead some facts indicating the use of an

ATDS, it would be "unreasonable to require a TCPA plaintiff to elaborate on the specific technical details of a defendant's alleged ATDS").

Finally, Defendants fault Plaintiffs for failing to allege how and when they revoked consent, and for not including the dates that a phone call was received after the alleged revocation. Defendants also argue that Plaintiffs likely consented to being contacted at their cell numbers. Consent is an affirmative defense on which Defendants bear the burden of proof, with dismissal only warranted if Plaintiffs have pleaded themselves out of court by alleging all the elements of the defense in their complaint. *Hudson v. Ralph Lauren Corporation*, 385 F. Supp. 3d 639, 642 (N.D. Ill. 2019). Here, the Court cannot conclude that Plaintiffs pleaded themselves out of court on the issue of consent. Because Plaintiffs' Amended Complaint does not preclude a finding that they did not consent to all calls Defendants made, the Court cannot dismiss Plaintiffs' TCPA claim on the basis of prior express consent at this stage.

Additionally, even if consent was given at some point in time, Plaintiffs alleged that they repeatedly revoked consent. In the TCPA context, once consent is given, it is effective until revoked. *See Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1065 (N.D. Ill. 2016) ("consent under the TCPA does not have an expiration date and is considered effective until revoked"). "[C]onsumers may revoke consent at any time and through any reasonable means, as long as the revocation clearly expresses a desire not to receive further messages." *Michel v. Credit Protection Association L.P.*, No. 14 C 8452, 2017 WL 3620809, at *3 (N.D. Ill. Aug. 23, 2017) (internal citations and quotations omitted). Plaintiffs' Amended Complaint states that Murad Husain

revoked consent at the end of April 2016 and "continued to revoke consent many times thereafter" and that since the date of the revocation, Nationstar and BANA made over 100 calls to Murad Husain. Mumtaz Husain alleged that she revoked consent for BANA to contact her on her cell phone in October 2017, yet BANA placed over 50 calls to Mumtaz Husain. Plaintiffs' Amended Complaint does not state how Plaintiffs' revoked consent or to whom. However, Defendants have cited to no authority holding that Plaintiffs are required to do so in order to survive a motion to dismiss. Plaintiffs have alleged sufficient facts at this stage to state a plausible claim for relief.

## C. ICFA Claim

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), a plaintiff must plausibly allege: (1) a deceptive or unfair act; (2) intent by the defendant that the plaintiff rely on the deception; (3) that the deception occurred during trade or commerce; (4) actual damage as a result of the deceptive act. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). "Actual damage" in this context means that Plaintiffs must have suffered actual pecuniary loss. *Id.* (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). A plaintiff may bring a claim under either the deceptive acts prong or unfair practices prong. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). Defendants moved to dismiss Plaintiffs' ICFA claim on two grounds: first, Plaintiffs claims are time-barred; second, Plaintiffs have failed to allege any deceptive act or unfair practices because they still owed on Mortgage 1. The Court addresses each argument in turn.

16

**1. Statute of Limitations**

Defendants argue that Plaintiffs' allegations fail to state a claim under the ICFA because the allegations underlying their claims are barred by the three-year statute of limitations. Defendants further argue that the "continuing violation" doctrine that could otherwise extend the limitations period on Plaintiffs' ICFA claim is inapplicable.

A statute of limitations defense "may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). Generally, an ICFA claim must be brought "within three years of the date the claim accrues." *Gater v. Bank of Am., N.A.*, No. 13 C 3267, 2013 WL 5700595, at *1 (N.D. Ill. Oct. 18, 2013). An ICFA claim "accrues when the plaintiff 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.'" *Id.* (citing *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994)); 815 ILCS 505/10a(e).

The parties do not dispute that a three-year statute of limitations applies to Plaintiffs' claim. However, they disagree about the date Plaintiffs' injury accrued. Defendants contend that Plaintiffs' claim accrued either in June 2013 or in April 2015, thus making their claim time-barred. Defendants first argue that Plaintiffs were on record notice that Mortgage 1 was still being enforced as early as 2013, when the assignment of that mortgage to Nationstar was recorded with the Will County

17

Recorder of Deeds. (Dkt. 44, ¶ 16); *In re Crane*, 742 F.3d 702, 706-07 (7th Cir. 2013) (describing record notice). According to Defendants, Plaintiffs would have had record notice in June 2013 that Mortgage 1 was still a valid lien on the Property. In April 2015, Plaintiffs executed a Loan Modification Agreement for Mortgage 1. Defendants contend this put Plaintiffs on notice that Defendants were still seeking repayment of Mortgage 1. Therefore, Plaintiffs knew or should have known about their injury in either 2013 or 2015. Given that Plaintiffs filed their lawsuit in November 2018, their claims, under Defendants' calculation, are time-barred. Additionally, Defendants argue that their later dunning letters and financial statements are mere "lingering consequences" of the original injury—BANA's "non-acknowledgement of the payoff of the First Loan"—that occurred in 2013 or 2015. (Dkt. 59, 14); *See Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *6 (N.D. Ill. Mar. 29, 2013) (stating that, under the continuing violation doctrine, "the key inquiry is whether [the alleged violation]…is a fresh act each day, or whether it was a discrete act that took place upon the first [occurrence] that merely had lingering consequences").

Plaintiffs counter that their ICFA claim relates to Defendants' billing practices and dunning letters sent *after* the foreclosure of their home in 2016. Plaintiffs believe their mortgage obligations were completely wiped out with the 2016 foreclosure of their home. As far as Plaintiffs are concerned, their injury occurred upon receipt of the dunning letters and Defendants' post-foreclosure collection activity, including the misleading financial statements and threats of additional foreclosure. Plaintiffs allege that they could not have known about the injury in 2013 or 2015, as the

dunning letters, misleading financial statements, and threats of an additional foreclosure, had not yet been sent. Moreover, Plaintiffs did not believe their mortgage had been paid off until after the 2016 foreclosure. Thus, the injury did not accrue until 2016. Under Plaintiffs calculation, the action is not time-barred as the present lawsuit was filed within three years of the receipt of the dunning letters, financial statements, and other post-foreclosure collection activity.

The Court agrees with Plaintiffs. The injury alleged in this lawsuit arose after the foreclosure of Plaintiffs' home in 2016, when Plaintiffs believed they no longer had any mortgage obligations. The ICFA claim relates to the threats of subsequent foreclosure, Defendants' collection practices, and the dunning letters. All of those actions occurred after the 2016 foreclosure. Those actions were not merely lingering consequences of Defendants' earlier "non-acknowledgment of the payoff of the First Loan." (Dkt. 59, 14) Accordingly, Plaintiffs' ICFA claim is not time-barred.

### 2. Plaintiffs' Allegations

Turning to the merits, Defendants argue that Plaintiffs have failed to state a claim under the ICFA because they have not sufficiently alleged any deceptive act by BANA or Nationstar. Plaintiffs' Amended Complaint alleges that Defendants violated the ICFA by attempting to collect on a debt that was not owed by Plaintiffs, by attempting to collect real estate taxes on a property that was no longer owned by Plaintiffs, and by charging monthly fees for inspections, upkeep, and attorneys with no legal grounds to do so. (Dkt. 44, ¶ 80) Defendants argue that Plaintiffs cannot prevail on a claim under the ICFA because Plaintiffs still owed Defendants a debt

under Mortgage 1. According to Defendants, the documents attached to Defendants' motion to dismiss demonstrate that Plaintiffs had a continuing obligation under Mortgage 1. Therefore, Defendants' bills, fees, and collection attempts were not improper, deceptive, or fraudulent.

But Defendants misstate the inquiry. Although a court may take judicial notice of public records and documents attached to the complaint and Defendants' briefing, the Court is not currently addressing a motion for summary judgment. It is merely testing the sufficiency of Plaintiffs' allegations. Plaintiffs have alleged (1) that Defendants engaged in deceptive acts when they sent false and misleading letters, notices, and financial statements; (2) Defendants intentionally sent Plaintiffs confusing, false, and misleading statements, letters and notices, and intended that Plaintiffs rely on those false statements, letters, and notices to pay on a bill that Plaintiffs did not owe; (3) the deceptive act occurred during commerce, the servicing and paying of a mortgage; and (4) that Plaintiffs suffered pecuniary loss in the form of loss of credit standing and creditworthiness, loss of business, loss of income, and loss of credit opportunities. Whether Plaintiffs can prove this claim (e.g. that defendants sent false information with the intent that Plaintiffs would rely on it to pay a debt they did not owe) is a question for a later stage. Plaintiffs have alleged enough facts at this stage to survive a motion to dismiss.

## **CONCLUSION**

For these reasons stated above, Defendants motion to dismiss [52] is granted in part and denied in part. Defendants' motion to dismiss the FDCPA claim (Count

I) is granted, with prejudice, Defendants' motion to dismiss the ICFA claim (Count

II) and TCPA (Count III) claim is denied.

E N T E R:

Dated: February 18, 2020

_____
MARY M. ROWLAND
United States District Judge

21